IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2017

**AARON WESTBROOK v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 14-03378      James C. Beasley, Jr., Judge**

_____

**No. W2017-00767-CCA-R3-PC**

_____

The petitioner, Aaron Westbrook, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective assistance of counsel relating to the entry of his guilty plea. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Aaron Westbrook.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Devon Lepard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

I.      *Guilty Plea Hearing*

On November 2, 2015, the petitioner pled guilty, as charged, to aggravated robbery in violation of Tennessee Code Annotated section 39-13-402. Prior to the entry of the guilty plea, the trial court conducted a thorough plea colloquy with the petitioner during which the trial court addressed the charged offense and the potential sentence the conviction carried, the agreed upon sentence and the petitioner's eighty-five percent eligibility for release, and the constitutional rights the petitioner waived upon the entry of

the plea.[1]  At the hearing, the State presented the following facts, which were stipulated to by the petitioner, concerning the aggravated robbery:

> Had this matter gone to trial, the State's proof would have been the following.  Under indictment 14-03378, that on December 31st, 2013, officers responded to a robbery at Epping Way and South Advantage Way.  That is located here in Shelby County.
>
> [The] victim said he had been communicating with the [petitioner] by text message from a phone number regarding an ad that he had posted on Craigslist for the sale of a Samsung tablet with a Bluetooth keyboard, total value of around six hundred dollars ($600).
>
> [The] [v]ictim advised that the suspect told him to meet him at the Jamesbridge Apartments, and that, when he arrived, the suspect examined the tablet for several minutes before motioning to a second suspect to approach, who did brandish a shiny black revolver and ordered [the victim] to get back in the car, or he would blow his head off.
>
> [The victim] did comply, and the suspect took the tablet and keyboard and fled between the buildings.
>
> Suspect two stood there with the gun and watched until the victim drove away.
>
> The victim did call police.  They were able to trace the number back to the [petitioner's] phone.  They put [the petitioner's] picture in a photographic lineup, and he was picked out by the victim as the person responsible for robbing him of that tablet.
>
> All those events did occur here in Shelby County, Tennessee.

Before reviewing the constitutional rights the petitioner was relinquishing upon entering his guilty plea, the trial court confirmed trial counsel reviewed and explained the plea to the petitioner prior to its entry and that he understood the same.  The trial court then affirmed the petitioner understood he was giving up his right to "go to trial," "to subpoena witnesses," "to listen to the witnesses who come in here to testify" and to

---

[1]During the same plea colloquy, the trial court also addressed the petitioner's crimes under a separate indictment not at issue in this appeal.

- 2 -

"cross-examine them," and "to testify" for himself. The trial court informed the petitioner he "could have been facing eight to thirty years" at eighty-five percent service for aggravated robbery at trial. Additionally, the trial court explained to the petitioner "if [he] get[s] arrested and convicted of other crimes of violence," the aggravated robbery conviction "could be used to enhance [his] punishment to life in prison." The petitioner waived the above-listed rights and confirmed he was not forced into pleading guilty or "promised" anything in exchange for pleading guilty. The petitioner asked the trial court if he would receive jail credit for the days he served after "[t]he time he got picked up." Finally, the petitioner stated he was satisfied with trial counsel's representation.

At the conclusion of the guilty plea hearing, the trial court sentenced the petitioner, as a Range I, mitigated offender, to 7.2 years in confinement to be served at eighty-five percent.

## II. *Post-Conviction Evidentiary Hearing*

The petitioner filed a *pro se* petition for post-conviction relief wherein he alleged he was party to an improper line-up, his guilty plea was involuntarily entered, and he received ineffective assistance of counsel. The post-conviction court appointed counsel, and the petitioner filed an amended petition for post-conviction relief wherein he alleged "he is being held unlawfully based on the grounds that he experienced ineffective assistance of counsel, which led to an unknowingly given guilty plea, and that he did not receive due process under the law." The petitioner filed a second amended petition for post-conviction relief wherein he further alleged he was denied due process because the trial court failed to comply with Rule 11 of the Tennessee Rules of Criminal Procedure upon the entry of his guilty plea. Specifically, the petitioner alleged the trial court failed to address: (1) "[t]he maximum penalty and any mandatory minimum penalty" faced by the petitioner; (2) the petitioner's "[r]ight to trial by jury;" (3) the petitioner's "[r]ight against self-incrimination;" (4) that a "[g]uilty plea must be free of any threats, promises, or coercion;" (5) that "[t]here must be a determination that there is a factual basis for the plea;" and (6) that "[b]y pleading guilty to the charge, future convictions can be enhanced based on the guilty plea." The post-conviction court then held an evidentiary hearing during which the petitioner and his trial counsel testified.

Trial counsel stated he was retained to handle the petitioner's trial and "first met [the petitioner] when he was in [g]eneral [s]essions." According to trial counsel, he discussed the discovery with the petitioner at the general sessions level and then "intermittently over the next fourteen months that [trial counsel] was on the case." Trial counsel stated he met with the petitioner twice in his office, and though he did not provide the petitioner with a "paper copy of the discovery," the two "discussed it at length." Specifically, trial counsel stated he and the petitioner discussed "the fact [the

petitioner] was pointed out in a photospread by the victim," though he was not "positive" he showed the petitioner the actual photospread wherein he was identified, "the fact [the petitioner] gave a statement to the police putting himself on the scene of the robbery," and "the fact that [the petitioner] was actually found with the gun." Trial counsel testified he and the petitioner also discussed the fact that the petitioner's brother was misidentified in a separate photospread during the investigation and they discussed how to use this fact as part of their strategy at trial. In trial counsel's opinion, however, the misidentification evidence "paled in comparison to the evidence against [the petitioner]." Trial counsel explained, as follows: "As I recall this was a [Craigslist] robbery that [the petitioner] used his personal cell phone to set up the meeting, that is how the police actually tracked him down, and the police found him in his home with the weapon that was used in the robbery."

Trial counsel explained he worked on the petitioner's case "at length," noting he obtained a bond reduction which enabled the petitioner to be released from custody in order to finish high school. Additionally, trial counsel worked "at length" to negotiate a plea deal on behalf of the petitioner under the mandatory minimum for an aggravated robbery conviction. Trial counsel stated he believed a guilty plea was in the petitioner's best interest because he "felt the facts of the case and the evidence against him was overwhelming," further stating the petitioner "expressed the same concern to [him]." Trial counsel stated his "last meeting [with the petitioner] was a few weeks before the trial, at which time [they] decided that the guilty plea was the best move."

Upon examination by the trial court, trial counsel affirmed he never questioned the petitioner's understanding of the proceedings surrounding his case or their communication regarding the same. Trial counsel had no hesitation about the petitioner's guilty plea, stating it was, in his opinion, freely, voluntarily, and knowingly entered. Trial counsel stated, "I think [the petitioner] understood everything." Trial counsel felt he "did everything [he] could in this case."

The petitioner then testified. He was twenty-one years old at the time of his guilty plea. Though he made it through the ninth grade, the petitioner stated he can read but he has "trouble comprehending sometimes." According to the petitioner, he and trial counsel discussed his case "[p]robably between five times, less than ten though." The petitioner stated he did not receive a copy of the discovery in his case, and he was unaware of the contents of the same. For example, the petitioner stated he learned that his brother was misidentified in a photospread while preparing for his post-conviction proceedings. The petitioner testified that if he had known of the misidentification issue prior to pleading guilty, he would not have done so. When asked what he and trial counsel discussed in their meetings if not the discovery, the petitioner stated trial counsel "was basically telling me while [the case] was being set off saying he was still trying to

- 4 -

negotiate." However, on cross-examination, the petitioner further detailed the discussions he had with trial counsel regarding the evidence at issue in the case. Specifically, trial counsel told the petitioner the investigation revealed the cell phone used in the robbery was held in the petitioner's name, the victim identified the petitioner as one of his robbers, and the petitioner was found with the gun used in the robbery upon arrest. The two also discussed the petitioner's statement to police and how to approach the case based upon the evidence against him. Ultimately, the petitioner chose to plead guilty, stating a week prior to trial, trial counsel told the petitioner "he didn't think he could win the trial." The petitioner believed trial counsel was "looking out for [his] best interest," and as a result, the petitioner pled guilty.

Regarding the guilty plea colloquy, the petitioner stated trial counsel told him to "agree with everything" asked of him by the trial court because trial counsel "already went over [] everything" with him prior to the guilty plea hearing. The petitioner admitted he knew he could have received more time than what he was pleading guilty to at trial, but maintained trial counsel "didn't say nothing about eight to thirty years or nothing like that." Rather, the petitioner believed he would receive 13.5 years at trial for an aggravated robbery conviction. The petitioner stated although trial counsel told him to plead guilty, ultimately it was his decision. The petitioner admitted the trial court informed him of the sentencing range he faced at trial if convicted of aggravated robbery which was eight to thirty years to be served at eighty-five percent.

However, the petitioner also testified he believed his conviction would come off his record. When asked by the trial court as to why he believed the conviction would come off his record, the petitioner stated "[n]o one told me that it couldn't." Despite this statement, the petitioner acknowledged the trial court "said if [he] get[s] in trouble again this could not come off [his] record." Furthermore, the petitioner affirmed he answered "yes" to the following questions from the trial court during his plea colloquy:

Do you understand that this is going to be on your record if you get arrested again? Do you understand that it's a felony for you to possess or own a firearm? Do you understand that aggravated robbery is a crime of violence? And what that means in the future if you get arrested and convicted of other crimes of violence this conviction could be used to enhance your punishment to life imprisonment, so you understand that?

Despite his affirmative responses to the above-questions during the plea colloquy, when asked what he did not understand, the petitioner stated:

I didn't understand the fact that if we had it set for trial that it made me feel like something wasn't right, you know. If he had it set for trial then

all of a sudden the week before I go to trial you tell me that you can't win, and then you tell me not to say nothing when I get up here, just agree with everything. Just the best I would get is the 7.2, to get up there and say yes - - yes, sir - - yes, sir, don't ask no questions. And so that's what I did. I ain't never been in trouble before, I never had to plead guilty before.

Regarding potential defenses, the petitioner stated trial counsel "told [him] he had none." The petitioner stated his current defense, as follows, "[a]s for now as I see the discovery case my defense is that [the victim] mis-identified my brother as being with me, and the victim said I did have a gun." In discussing the facts disputed by the petitioner in outlining his present defense, the following exchange occurred:

THE COURT: Okay. I mean, so you're saying the fact that you agreed you were there and told the police you were there, the fact that the victim identified you, the fact that your cell phone was used and they connected your cell phone and the victim, and that the defense that you wanted to put forward was that the victim mis-identified your brother as the second person who was out there.

THE PETITIONER: Well, sir - -

THE COURT: I mean, is that what you're saying?

THE PETITIONER: Yes, sir. I feel that I should never had aggravated robbery. If they're looking at my discovery packet I shouldn't have a[n] aggravated robbery because I didn't have a gun, and it wasn't a second suspect.

THE COURT: You're saying there was no second suspect out there?

THE PETITIONER: No second suspect, so - -

THE COURT: And you're saying the second suspect wasn't identified or there wasn't a second suspect?

THE PETITIONER: It wasn't a second suspect.

THE COURT: So it was just one person out there?

THE PETITIONER: Me.

- 6 -

THE COURT:  Okay.

At the conclusion of the evidentiary hearing and upon its review of the petitions before it, the post-conviction court denied the petitioner's request for relief.  This timely appeal followed.

## ANALYSIS

On appeal, the petitioner argues the post-conviction court erred in denying his petition, alleging counsel's ineffectiveness led him to plead guilty.  Specifically, in support of his claim, the petitioner contends trial counsel failed to review the discovery with him leaving the petitioner to first note inconsistencies in the discovery during his post-conviction proceedings.  The petitioner contends his lack of discovery review "would make it impossible for a guilty plea of [his] to have been knowing and voluntary."  The petitioner asserts "he would not have pled guilty had he been able to review his [d]iscovery, and had a clear understanding of everything that was contained in it."  Similarly, the petitioner asserts trial counsel and the trial court failed to "fully and properly explain[] to him exactly what his rights were, and what he was giving up" in entering a guilty plea.  In contrast, the State contends the petitioner failed to present evidence of trial counsel's deficiencies or how his alleged deficiencies prejudiced the petitioner's guilty plea.  The State also asserts "the petitioner has not established a violation by the trial court" regarding the petitioner's due process rights.  Upon our review, we agree with the State.

The petitioner bears the burden of proving his post-conviction allegations by clear and convincing evidence.  *See* Tenn. Code Ann. § 40-30-110(f).  The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them.  *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996).  This Court will not reweigh or reevaluate evidence of purely factual issues.  *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997).  However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel presents mixed questions of fact and law.  *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).  Thus, this Court reviews the petitioner's post-conviction allegations *de novo*, affording a presumption of correctness only to the post-conviction court's findings of fact.  *See id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that

the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id.* Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). In order to determine if a guilty plea is knowingly, voluntarily, and intelligently entered, a trial court must substantially comply with the requirements of Rule 11 of the Tennessee Rules of Criminal Procedure, which provides, in part:

> (1) *Advising and Questioning the Defendant.* Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in

open court and inform the defendant of, and determine that he or she understands, the following:

(A) The nature of the charge to which the plea is offered;

(B) the maximum possible penalty and any mandatory minimum penalty;

(C) if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offence to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury;

. . .

(2) *Insuring That Plea Is Voluntary.* Before accepting a plea of guilty or nolo contendere, the court shall address the defendant personally in open court and determine that the plea is voluntary and is not the result of force, threats, or promises (other than promises in a plea agreement). The court shall also inquire whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or the defendant's attorney.

(3) *Determining Factual Basis for Plea.* Before entering judgment on a guilty plea, the court shall determine that there is a factual basis for the plea.

Tenn. R. Crim. P. 11; *Moore v. State*, No. M2015-00139-CCA-R3-PC, 2015 WL 5817965, at \*6-7 (Tenn. Crim. App. Oct. 6, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). "Tennessee case law has further refined the requirements of a plea colloquy to include informing a defendant and ensuring that he understands that different or additional punishment may result from his guilty plea due to prior convictions or other factors and that the resulting conviction may be used for enhancement purposes in any subsequent criminal actions." *Id.* at \*7 (citing *Lane*, 315 S.W.3d at 564). A trial court must substantially comply with these requirements in order to avoid error. *Howell v. State*, 185 S.W.3d 319, 331 (Tenn. 2006). "'Where there is substantial compliance the root purpose of the prescribed litany has been served and the guilty plea passes due process scrutiny because it was made voluntarily and understandingly.'" *Id.* (quoting *State v. Neal*, 810 S.W.2d 131, 138 (Tenn. 1991)).

In the context of a post-conviction challenge to a guilty plea, both prongs of the *Strickland* test must still be met. *Garcia v. State*, 425 S.W.3d 248, 256 (2013). Thus, to successfully challenge his guilty plea, the petitioner must show counsel's performance was deficient, and he "must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea." *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Garcia*, 425 S.W. 3d at 257 (Tenn. 2013).

Here, the petitioner's claims are three-fold. First, the petitioner asserts trial counsel's representation was deficient because he failed to provide a copy of the discovery file to the petitioner and failed to fully discuss the contents of the same with him. As a result, the petitioner claims trial counsel's representation was ineffective. Secondly, the petitioner argues the alleged ineffectiveness of trial counsel "led to an unknowingly given guilty plea." Finally, the petitioner asserts the trial court failed to strictly comply with Rule 11, thus rendering his guilty plea void. We will discuss each issue in turn.

The petitioner claims trial counsel was ineffective because he failed to fully review the discovery in the case with him. However, this claim is not supported by the record. Rather, both the petitioner and trial counsel testified the two engaged in discussions regarding the charges the petitioner faced, the evidence at issue in the case, and their strategy leading up to the guilty plea. Specifically, the two discussed the photospread wherein the victim identified the petitioner; they discussed the petitioner's

statement to police wherein he admitted to being at the scene of the robbery; and, they discussed how the petitioner was found with the gun used in the aggravated robbery upon arrest. Based upon the evidence outlined above, trial counsel's strategy was to negotiate the best plea deal he could on behalf of the petitioner.

The post-conviction court summarized its factual findings as to trial counsel's representation, as follows:

> Okay. First of all the first issue with regard to the representation by [trial counsel] the [c]ourt has listened to the testimony. I am satisfied that [trial counsel] thoroughly represented [the petitioner], that he followed all of the protocol that is required of trial counsel, that he completely advised [the petitioner] of the charges against him, completely advised him of the discovery involved in the case, kept him apprised of what he was doing in attempting to negotiate the best deal that he could.

> Based on the testimony from [trial counsel] and from the acknowledgement of [the petitioner] the [c]ourt feels that the evidence against [the petitioner] was extremely strong and that [trial counsel] advised him of that and advised him that, in his opinion, the best thing he could do is get the best deal that he could and he got the best deal that he could which was below the minimum, and [the petitioner] agreed to take it.

> So I find, first of all, that [trial counsel] conducted himself in a manner that I think was appropriate, that [the petitioner] was effectively represented by [trial counsel] throughout the course of this proceeding.

In its written order, the post-conviction court further described trial counsel's representation of the petitioner in the context of the petitioner's post-conviction claims, as follows:

> [Trial counsel] testified that he met with the petitioner on multiple occasions and the petitioner confirmed that testimony. [Trial counsel] testified that he went over the entire discovery with the petitioner and pointed out the strength of the State's case and the petitioner confirmed that testimony as well. This court never really heard any allegations of ineffective assistance of counsel and there was no evidence presented to substantiate such an allegation. This court found that counsel was very effective and through continued effort against a strong case was able to negotiate a lower than minimum offer in exchange for a guilty plea. The issue of ineffective assistance of counsel is not well taken.

As it related to his ineffectiveness claims, the petitioner also argues he would not have pled guilty had he known his brother had been misidentified as a participant in the robbery. However, trial counsel stated he discussed the misidentification evidence with the petitioner prior to the guilty plea. Trial counsel then weighed the misidentification evidence against the rest of the evidence in the case and ultimately advised the petitioner to plead guilty. The post-conviction court accredited trial counsel's testimony, and nothing in the record preponderates against its factual findings. *See Tidwell*, 922 S.W.2d at 500. Furthermore, nothing in the record indicates trial counsel's strategy in advising the petitioner to plead guilty was not sound. *See Strickland*, 466 U.S. at 689.

In denying the petition, the post-conviction court found trial counsel was effective in his representation of the petitioner, and we agree. Nothing in the record suggests trial counsel was deficient regarding the discovery at issue in the case or in obtaining a plea deal for the petitioner. As such, the petitioner has failed to overcome the presumption that trial counsel pursued "sound trial strategy" in relation to these issues. *Strickland*, 466 U.S. at 689 (internal quotations omitted). Accordingly, the petitioner has not proven trial counsel was ineffective as to any alleged deficiencies, and the petitioner cannot show how the alleged deficiencies of counsel caused him to "unknowingly" plead guilty. The petitioner is not entitled to relief as to this issue.

Turning to the guilty plea itself, nothing in the record indicates the plea violates due process or was unknowingly, unintelligently, or involuntarily entered. The evidence produced during the guilty plea hearing supports the finding that the petitioner was fully aware of the nature of the guilty plea and that the trial court complied with the requirements of Rule 11 upon the entry of the same. The post-conviction court summarized the statutory requirements reviewed with the petitioner upon the entry of the guilty plea, as follows:

And then when [the petitioner] decided to enter a guilty plea the [c]ourt is satisfied from the [c]ourt's own colloquy with [the petitioner] that [the petitioner] understood what he was doing when he entered his guilty plea.

The [c]ourt advised [the petitioner] and showed him and he acknowledged that he had signed a petition for waiver of trial by jury, that this was a petition that you signed waiving your right to a trial by jury, and that you're requesting that I accept your guilty plea - - me being the [c]ourt.

[The petitioner] acknowledged that and he acknowledged that he had been over it with [trial counsel], that he understood it, and that he wanted to

waive his right to go to trial. The [c]ourt then went through all of the rights that he was entitled to, including if you don't want to testify you don't have to, nobody can force you to testify.

You have a right, nobody can force you to testify, and if you choose not to testify I'm going to tell the jury they can't hold it against you for any reason, do you understand that. And I think [the petitioner] was given his rights.

I think he was advised of what the potential punishment that he could have been facing was, eight to thirty years at eighty-five percent. I think he was well aware of the deal that he was getting which was lower than the minimum sentence required.

I think that [the petitioner] was in full acknowledgement of everything that he was doing. I think he took a good deal because a good deal was looking him in the face, and at some point after he got to the penitentiary or at some point whenever he started looking at this and decided he wanted to object is the first time that there's any indication that there's anything improper or wrong with any of the proceedings.

The [c]ourt is of the opinion that [the petitioner] freely and voluntarily and full knowledge of what he was facing and full knowledge of what the facts were waived his right to go to trial [and] entered a guilty plea freely and voluntarily without any threats, without any coercion, without any coercion by the [c]ourt or by [trial counsel], that [the petitioner] entered a guilty plea.

And the [c]ourt is satisfied that all of his rights were protected and I will, therefore, find there's no basis for a post-conviction relief, and I'll deny the petition.

Similarly, the post-conviction court further outlined its findings as to the petitioner's guilty plea in its written order, stating:

The petitioner next argues that his guilty plea colloquy was not proper and that he was not properly advised of his statutory and constitutional rights by the court. Therefore he argues that his plea was not freely, voluntarily and knowingly entered into. There was no proof offered by the petitioner to substantiate such a claim and there was only argument of counsel. A review of the guilty plea transcript indicates that the

petitioner was advised of all of his constitutional rights and that he freely, voluntarily and knowingly waived those rights and entered into his negotiated guilty plea to a sentence lower than the minimum (as a mitigated offender).

Again, our review of the transcript of the guilty plea hearing mirrors the findings of the post-conviction court. The record shows the trial court properly and thoroughly explained the nature and consequences of the petitioner's guilty plea, including the charges against the petitioner, the penalties he faced as a result of the plea, and the potential penalties he faced if he proceeded to trial. The record demonstrates that at the time the petitioner entered his guilty plea, he understood he would serve a 7.2-year sentence for aggravated robbery. Throughout the hearing, the petitioner affirmed that he understood his rights and wished to proceed with the guilty plea. The petitioner has failed to offer any evidence that preponderates against the post-conviction court's characterization of the knowing and voluntary nature of the petitioner's guilty plea. *See Tidwell*, 922 S.W.2d at 500. Accordingly, the record supports the post-conviction court's finding that "there is no basis for the relief sought by petitioner." The petitioner is not entitled to relief as to this issue.

As explained above, the post-conviction court found that the petitioner knowingly, intelligently, and voluntarily entered his guilty plea. Once a guilty plea is knowingly, voluntarily, and intelligently entered, it is not void simply because the petitioner is no longer happy with his decision. *Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002), *no perm. app. filed*. Further, in order to succeed on his ineffective assistance of counsel claim, aside from presenting clear and convincing factual evidence establishing counsel's deficient performance, the petitioner must also establish prejudice. Specifically, the petitioner must show that but for counsel's alleged deficient performance, he would have insisted on going to trial. *See Grindstaff v. State*, 297 S.W.3d 208, 216-17 (Tenn. 2009); *Strickland*, 466 U.S. at 687. The petitioner has not met this burden. No evidence exists in the record to support the petitioner's attack on trial counsel's performance or how the alleged deficient performance affected the outcome of his guilty plea. *See Strickland*, 466 U.S. at 687. Instead, the record contains sufficient evidence that the petitioner understood the options he faced prior to entering his guilty plea, the sentencing associated with the guilty plea, and the rights he waived upon entering the guilty plea. Thus, not only has the petitioner failed to show counsel was ineffective, but also he cannot prove he was prejudiced. Without proof of prejudice, the petitioner's claims fail and he is not entitled to post-conviction relief on the grounds of ineffective assistance of counsel.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE